Matter of B.Z. Chiropractic, P.C. v Allstate Ins. Co. (2021 NY Slip Op 04484)





Matter of B.Z. Chiropractic, P.C. v Allstate Ins. Co.


2021 NY Slip Op 04484


Decided on July 21, 2021


Appellate Division, Second Department


Dillon, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 21, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BETSY BARROS
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.


2019-04454 
2019-04456
 (Index No. 719878/18)

[*1]In the Matter of B.Z. Chiropractic, P.C., respondent,
v
Allstate Insurance Company, appellant.



APPEALS by Allstate Insurance Company, in a hybrid proceeding pursuant to CPLR 5225 to compel the turnover of funds held in a bank account in the name of Allstate Insurance Company and an action for declaratory relief, from (1) an order of the Supreme Court (Laurence L. Love, J.), entered March 8, 2019, in Queens County, and (2) an order of the same court entered April 22, 2019. The order entered March 8, 2019, insofar as appealed from, granted that branch of the petition/complaint which was for a judgment declaring that a judgment in favor of B.Z. Chiropractic, P.C., and against Allstate Insurance Company entered November 15, 2001, in the Civil Court, Queens County, accrued interest at the rate of 2% per month compounded and denied the cross petition of Allstate Insurance Company, inter alia, to dismiss the proceeding/action. The order entered April 22, 2019, denied the motion of Allstate Insurance Company for leave to renew and reargue its cross petition.



Peter C. Merani, P.C., New York, NY (Adam Waknine of counsel), for appellant.
Amos Weinberg (Lynn Gartner Dunne, LLP, Mineola, NY [Kenneth L. Gartner] of counsel), for respondent.



DILLON, J.


OPINION & ORDER
This action invites us to address whether an advisory opinion or dicta in an order by a court qualifies under res judicata, collateral estoppel, or the law of the case doctrines to preclude a court in a later proceeding from considering the same issue. We hold that a court's dicta is not subject to the preclusive effect of the doctrines of res judicata, collateral estoppel, or law of the case.
I. Relevant Facts
The underlying facts of this matter exhibit the signs of age and follow a somewhat unusual path, but are not particularly complex.
In 2000, B.Z. Chiropractic, P.C. (hereinafter BZ), commenced an action in the Civil Court, Queens County, against Allstate Insurance Company (hereinafter Allstate) to recover assigned first-party no-fault benefits (hereinafter the Civil Court action). On November 15, 2001, judgment was entered in favor of BZ and against Allstate in the amount of $8,847.49, which included both the amount of compensatory damages plus prejudgment interest, costs, and disbursements (hereinafter the 2001 judgment).
BZ did not seek to enforce the 2001 judgment until 2015. In 2015, counsel for BZ sent Allstate a letter demanding $229,981.66, reflecting the amount of the 2001 judgment plus [*2]compound postjudgment interest computed at 2% per month. Thereafter, Allstate paid BZ $8,842.49, and moved in the Civil Court for an order, inter alia, tolling the accrual of all postjudgment interest. The court, in an order dated November 16, 2015, held that BZ unreasonably allowed the accrual of compound interest for almost 15 years and that interest should not accrue for the period of November 1, 2005, through June 19, 2015. The result of the court's order was to leave BZ entitled to only the amount of the original judgment plus interest accruing before and after the judicially-imposed tolling period.
With the interest that accrued before November 1, 2005, and after June 19, 2015, Allstate paid, inclusive of the original judgment, $22,999.70. Allstate then filed another motion in the Civil Court seeking, among other things, to compel BZ to file a satisfaction of judgment for the amount that was due and that Allstate had paid. In an order entered July 7, 2016, the court, among other things, directed the clerk to enter a satisfaction of judgment for the stated sum (see B.Z. Chiropractic, P.C. v Allstate Ins. Co., 56 Misc 3d 139[A], 2017 NY Slip Op 51091[U] [App Term, 2d Dept, 11th & 13th Jud Dists]).
BZ appealed both of the Civil Court orders to the Appellate Term for the 2nd, 11th, and 13th Judicial Districts. The only issues on appeal before the Appellate Term were whether interest should have been judicially tolled between November 1, 2005, and June 19, 2015, and whether a satisfaction of judgment should have been entered, as those were the issues that had been decided by the Civil Court in the orders appealed from. Apparently not placed before the Civil Court or the Appellate Term was any issue about the rate at which any such interest should be calculated, though in its submission, BZ incidentally mentioned that the rate was 2% per month as mandated by Insurance Law § 5106 and former 11 NYCRR 65.15(h).
By decision and order dated August 18, 2017, the Appellate Term held that the Civil Court had erred in tolling the accrual of interest on the 2001 judgment on the ground that there was no evidence of any actions or conduct by BZ which prevented Allstate from timely paying the judgment (see B.Z. Chiropractic, P.C. v Allstate Ins. Co., 56 Misc 3d 139[A], 2017 NY Slip Op 51091[U], *2). That portion of the Appellate Term's decision is not at issue here. However, the Appellate Term also "note[d] that, contrary to [BZ's] position, postjudgment interest should be calculated pursuant to CPLR 5004 and not at the two percent per month rate provided for in 11 NYCRR 65-3.9(a)" (56 Misc 3d 139[A], 2017 NY Slip Op 51091[U], *2). The Appellate Term therefore, among other things, modified the Civil Court order entered July 7, 2016, to the extent of directing that the filed satisfaction of judgment be a mere partial satisfaction toward the new total amount due to BZ (see 56 Misc 3d 139[A], 2017 NY Slip Op 51091[U], *2). The language of the Appellate Term's decision, and the difference between the legal rate of interest under CPLR 5004 and the 2% per month rate of interest under Insurance Law § 5106 and 11 NYCRR 65-3.9(a), are at the heart of the controversy that followed.
Thereafter, BZ moved in the Appellate Term for a clarification of its August 18, 2017 decision and order insofar as the interest rate language was concerned, and for leave to appeal to this Court. By decision and order on motion dated December 14, 2017, the Appellate Term granted BZ's motion to the extent of clarifying that "it was this court's intention to note that interest be awarded at the rate of nine percent per year as set forth in CPLR 5004." In the same order, the Appellate Term denied leave to appeal to this Court because the portion of its August 18, 2017 decision and order which BZ sought to appeal was "advisory" and not appealable as of right or by permission. In other words, by its own description, the Appellate Term's mention that interest be calculated at the 9% rate of CPLR 5004 was not a determination rendered on the merits.
BZ, perhaps frustrated that it was denied an appellate remedy on the issue of the proper rate of interest on the judgment, filed a separate motion with this Court, for leave to appeal the Appellate Term's orders. By decision and order on motion dated March 2, 2018, this Court denied BZ's motion for leave to appeal. While this Court did not explain its reason for denying leave to appeal, it would make sense for our Court to have denied leave because "advisory opinions" outside the scope of the litigated issues are not appealable as of right or by permission (see Bennett v State Farm Fire & Cas. Co., 189 AD3d 748; Thornhill v Degen, 185 AD3d 982, 983).
By notice of petition dated May 18, 2018 (hereinafter the First Petition), BZ commenced a hybrid turnover proceeding pursuant to CPLR 5225 against Allstate in the Supreme Court, Queens County, seeking the turnover of monies from Allstate's bank account maintained outside New York in such sum sufficient to satisfy the 2001 judgment, and action for a judgment declaring that the 2001 judgment accrued interest at the rate of 2% per month compounded. By [*3]order entered November 16, 2018, the Supreme Court dismissed the First Petition for improper service of process.
Thereafter, BZ commenced the instant hybrid turnover proceeding pursuant to CPLR 5225 and action for declaratory relief against Allstate in the Supreme Court, Queens County, seeking the same relief that BZ had sought with the First Petition. The petition/complaint in the instant proceeding/action was specifically denominated as seeking a declaratory judgment and order that Allstate pay the underlying judgment at an interest rate of 2% per month, compounded (see CPLR 3001). In effect, BZ's turnover proceeding/action sought to ignore the Appellate Term's "advisory opinion" that interest be computed at the 9% annual rate of CPLR 5004, by instead calculating interest upon the higher rate of 2% per month as defined by Insurance Law § 5106 and former 11 NYCRR 65.15(h). Allstate cross-petitioned for, inter alia, dismissal of the proceeding/action on the grounds of res judicata and collateral estoppel based upon the Appellate Term's earlier determinations that interest should be calculated at the 9% rate. The cross petition also sought to impose monetary sanctions against BZ pursuant to 22 NYCRR 130-1.1 for having commenced a frivolous proceeding/action otherwise barred by the doctrines of res judicata and collateral estoppel.
By order entered March 8, 2019, the Supreme Court denied that branch of BZ's petition/complaint which was to turn over monies in Allstate's bank account because the bank was not a party as required by CPLR 5225(b). However, to the extent the hybrid proceeding/declaratory judgment action sought a judgment declaring the proper rate of postjudgment interest, which did not involve the nonparty bank, the court granted that branch of the petition/complaint, holding that BZ was entitled to a judgment declaring that the 2001 judgment accrued interest at the rate of 2% per month compounded. The court denied Allstate's cross petition.
Allstate moved for leave to renew and reargue its cross petition. In support of that branch of its motion which was for leave to renew, Allstate contended that BZ had sought the same relief in the First Petition, which had been dismissed for improper service of process. Allstate argued, in support of that branch of its motion which was for leave to reargue, that BZ's proceeding/action was barred by res judicata, collateral estoppel, and, for the first time during the various litigations, the doctrine of law of the case.
In an order entered April 22, 2019, the Supreme Court denied that branch of Allstate's motion which was for leave to renew. It determined that Allstate's stated basis for that branch of its motion, regarding the earlier procedural dismissal, did not involve new evidence or a change in the law, citing Delvecchio v Bayside Chrysler Plymouth Jeep Eagle (271 AD2d 636). The court likewise denied the separate branch of the motion that sought leave to reargue, on the ground that the court had not earlier misapprehended relevant facts or misapplied controlling principles of law.
Allstate now appeals from so much of the March 8, 2019 order as granted that branch of the petition/complaint which was for a judgment declaring that the 2001 judgment accrued postjudgment interest at the rate of 2% per month compounded and as denied its cross petition. Allstate also appeals from the April 22, 2019 order.
II. Legal Analysis
We affirm the order entered March 8, 2019, insofar as appealed from, and the order entered April 22, 2019, insofar as reviewed.
A. The Supreme Court Properly Determined BZ's Prayer for a Declaratory Judgment
Allstate argues on appeal that BZ's commencement of a declaratory judgment action in the Supreme Court was merely a guise to make an end run around the Appellate Term determinations in the Civil Court action. As discussed below, since the Supreme Court had the authority to entertain the issue of postjudgment interest in an action for a declaratory judgment, and since the Appellate Term's discussion of the applicable rate of interest was merely "advisory," BZ's filing, rather than representing an end run, may instead be viewed as good lawyering under the unusual circumstances of the parties' procedural history.
BZ's petition/complaint was a hybrid turnover proceeding (see CPLR 5225[b]) and a declaratory judgment action (see CPLR 3001). A judgment creditor who seeks to satisfy a judgment from assets that are not in the possession of the judgment debtor may commence an expedited CPLR 5225 turnover proceeding (see Matter of Sirotkin v Jordan, LLC, 141 AD3d 670, 671; Matter of Miraglia v Essex Ins. Co., 96 AD3d 945; Matter of Signature Bank v HSBC Bank USA, N.A., 67 AD3d 917, 918). Here, BZ's proceeding sought the turnover of money maintained [*4]by Allstate's bank, Bank of America, N.A. (hereinafter BANA), which was not made a party to the proceeding/action. The Supreme Court properly dismissed that branch of BZ's petition/complaint due to the absence of BANA as a party.
Doing so, however, did not require dismissal of the declaratory judgment portion of the hybrid action/proceeding, as the litigation and adjudication of such hybrid matters is not uncommon (see e.g. Matter of East W. Bank v L & L Assoc. Holding Corp., 144 AD3d 1030, 1032; Shipman v City of N.Y. Support Collection Unit, 183 Misc 2d 478, 483 [Sup Ct, Bronx County]). In a declaratory judgment action, the court does not direct a party to do an act or refrain from doing an act, but merely declares the prevailing party's rights with respect to the matter in controversy for the purpose of guiding future conduct, and then, as once colloquially described by Professor David Siegel, "let[s] things go at that" (Siegel & Connors, NY Prac § 436 [6th ed Dec. 2020 Update]; see CPLR 3001). CPLR 103(c) vests the Supreme Court with authority to convert an improperly-commenced proceeding into a declaratory judgment action (see Matter of Diamond Asphalt Corp. v Sander, 92 NY2d 244, 253; Matter of Lewis Tree Serv. v Fire Dept. of City of N.Y., 66 NY2d 667, 669). Here, the issues involved in the dismissed turnover proceeding were easily severable from the free-standing issue of the appropriate rate of interest that was to accrue on the judgment, and did not require BANA as a party.
Moreover, CPLR 3001 uniquely vests the Supreme Court with authority to render declaratory judgments to the exclusion of other courts of the state. Parenthetically, civil courts are vested with jurisdiction to render declaratory judgments regarding the obligation of an insurer to defend or indemnify a defendant in an action (see CCA 212-a[a]; Fresh Acupuncture, P.C. v Interboro Ins. Co., 56 Misc 3d 98, 100 [App Term, 2d Dept, 11th & 13th Jud Dists]), but that jurisdiction is not applicable here. Therefore, to the extent BZ wished to obtain a declaratory judgment governing the rate of interest on its judgment, and with appellate remedies correctly foreclosed, the Supreme Court was the only court where it could seek redress on that issue. The Supreme Court's subject matter jurisdiction was not circumscribed by the fact that prior, related proceedings had been pending in the Civil Court, Queens County (see Abed v Zach Assoc., 124 AD2d 531, 532; see also Hunter Sports Shooting Grounds, Inc. v Foley, 73 AD3d 702, 705).
B. Determining the Rate of Interest De Novo Was Not Precluded by the Doctrines of Res Judicata, Collateral Estoppel, or Law of the Case
Allstate failed to establish that the declaratory relief BZ sought as to the applicable rate of interest was barred by the doctrines of res judicata, collateral estoppel, or law of the case.
Res judicata gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently re-litigating any questions that were already decided (see Landau, P.C. v LaRossa, Mitchell & Ross, 11 NY3d 8, 13; Matter of Grainger [Shea Enters.], 309 NY 605, 616). The doctrine requires that there be a judgment on the merits from a prior action between the same parties involving the same subject matter (see Matter of Josey v Goord, 9 NY3d 386, 389; Matter of Hunter, 4 NY3d 260, 270; see also Puryear v Hutchinson, 175 AD3d 521, 522).
The related doctrine of collateral estoppel, which is narrower, precludes a party from relitigating a particular issue where the identical issue has already been decided in the prior action, is decisive in the present action, and where the party to be precluded had a full and fair opportunity to contest the issue in the prior proceeding (see Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d 64, 72; Buechel v Bain, 97 NY2d 295, 303-304; Ryan v New York Tel. Co., 62 NY2d 494, 500; Mahler v Campagna, 60 AD3d 1009, 1011; Sherman v DeRosa, 34 AD3d 782, 782-783).
"The doctrine of the law of the case applies only to legal determinations that were necessarily resolved on the merits in [a] prior decision [of the court], and to the same questions presented in the same case" (Deutsche Bank Natl. Trust Co. v Gambino, 181 AD3d 558, 559 [internal quotation marks omitted]; Mosby v Parilla, 140 AD3d 1129, 1130-1131 [internal quotation marks omitted]). The doctrine articulates a sound policy that once an issue is judicially determined, that should be the end of the matter as far as judges and courts of coordinate jurisdiction are concerned (see Matter of Oyster Bay Assoc. Ltd. Partnership v Town Bd. of Town of Oyster Bay, 21 AD3d 964, 966; Mosby v Parilla, 140 AD3d at 1130-1031).
Here, the Appellate Term's expression in its decision and order dated August 18, 2017, regarding the applicable rate of interest was not determined on the merits, but was instead merely advisory. The reasons are threefold. The first reason is that the Appellate Term's reference [*5]to the applicable rate of interest as being that of CPLR 5004, and not that of former 11 NYCRR 65.15(h), was never litigated by the parties on the merits either in the Civil Court from which the appeal came, nor in the Appellate Term to which the appeal went. The Appellate Term's reference to the CPLR 5004 rate of interest was, under the circumstance of that appeal, sua sponte and gratuitous. The rate of interest was not an issue in the Civil Court action, as that action did not involve a controversy over the rate of interest but merely involved whether interest had been equitably forfeited.
The second, independent reason that the Appellate Term's mention of CPLR 5004 interest was merely advisory involves its own description of its thinking on the issue, as set forth in the language of its decision and order on motion dated December 14, 2017. BZ had filed a motion in the Appellate Term for a "clarification" of the interest rate language in the Appellate Term's prior decision and order of August 18, 2017. BZ's motion was not that of renewal or reargument (see CPLR 2221[d], [e]), and therefore, did not bring the merits of the proper rate of interest through the court's backdoor. The Appellate Term "clarified" in its order dated December 14, 2017, that its mention of awardable interest at the CPLR 5004 rate "was advisory." We should take the Appellate Term at its word, that its intent was to refer to CPLR 5004 in an advisory manner only.
The third reason that the Appellate Term's language about CPLR 5004 interest was advisory involves the appellate remedies that BZ sought and which were denied. In its motion for "clarification," BZ had also moved for leave to appeal the decision and order dated August 18, 2017, to this Court. The Appellate Term denied that relief on the ground that its mention of CPLR 5004 was merely advisory. BZ, perhaps frustrated that it was denied a further appellate remedy by the Appellate Term, filed a successor motion with this Court, seeking leave to appeal. This Court likewise denied that motion. While this Court did not explain the reasons for its denial, the determination can be easily explained by the Appellate Term's description of its CPLR 5004 language as having been merely "advisory," which, as noted, is not appealable by right or permission (see Bennett v State Farm Fire & Cas. Co., 189 AD3d 748; Thornhill v Degen, 185 AD3d at 983).
Thus, the Appellate Term has unambiguously described its mention of the CPLR 5004 rate of interest as being advisory only. Courts of New York do not issue advisory opinions for the fundamental reason that in this state "'[t]he giving of such opinions is not the exercise of the judicial function'" (Cuomo v Long Is. Light Co., 71 NY2d 349, 354, quoting Self-Insurer's Assn. v State Indus. Commn., 224 NY 13, 16 [Cardozo, J.]; see also Premier Restorations of N.Y. Corp. v New York State Dept. of Motor Vehs., 127 AD3d 1049), as our courts instead resolve controverted questions of fact and law affecting parties' present interests (see Lewis v City of Gloversville, 246 AD2d 804, 805; Gish v Village of Peekskill, 255 App Div 706). However, even Hannibal and his troops crossed the Alps once, as did the Appellate Term euphemistically here. There is no plausible way of construing the Appellate Term's discussion of CPLR 5004 interest as anything other than what the Appellate Term described it as being—an advisory opinion rather than a determination of an issue litigated by the parties on the merits.
Thus, in the instant proceeding at issue here, Allstate was unable to establish that there was a determination on the merits in any prior proceeding about the proper rate of interest applicable to the judgment, as to preclude the Supreme Court from considering the issue de novo (see Puryear v Hutchinson, 175 AD3d at 522). Contrary to Allstate's contentions, the applicable rate of accruable postjudgment interest upon the 2001 judgment was not "decided" on the merits in the Civil Court or the Appellate Term (see Ryan v New York Tel. Co., 62 NY2d at 500), and the Appellate Term's advisory opinion on the rate of interest is not entitled to the preclusive effects of the doctrines of res judicata, collateral estoppel, or law of the case (see Jeffreys v Griffin, 1 NY3d 34, 39 [as to collateral estoppel]; Madden v Town of Greene, 95 AD3d 1426, 1428 [as to law of the case]; Town of E. Hampton v Omabuild USA No. 1, 215 AD2d 746, 750 [as to collateral estoppel]; Thiebeau v Wahl, 91 AD2d 869 [as to res judicata]). Similar reasoning has been applied to expressions of dicta, as distinguished from advisory opinions, which also do not trigger the doctrines of res judicata (see Sherb v Monticello Cent. Sch. Dist., 163 AD3d 1130, 1132; Congress Talcott Corp. v Pacemakers Trading Corp., 177 AD2d 459, 459-460), collateral estoppel (see Jackson v Board of Educ. of City of N.Y., 30 AD3d 57, 59-60; Pollicino v Roemer & Featherstonhaugh, 277 AD2d 666, 668; Town of E. Hampton v Omabuild USA No. 1, 215 AD2d at 750), or law of the case (see Donahue v Nassau County Healthcare Corp., 15 AD3d 332, 333).
C. The Supreme Court Properly Determined That the Applicable Rate of Interest [*6]is 2% Per Month Compounded
The Supreme Court, having properly determined that the orders of the Appellate Term did not preclude its de novo consideration of the proper rate of interest on the judgment, then also properly held that postjudgment interest on the 2001 judgment accrued at the rate of 2% per month, compounded.
As a general matter, the language of general statutes are to yield to the language of specific ones (see McKinney's Cons Laws of NY, Book 1, Statutes § 238; Matter of Ford v New York State Racing & Wagering Bd., 107 AD3d 1071, 1078, affd 24 NY3d 488; J.N. Futia Co. v Schenectady Municipal Hous. Auth., 33 AD2d 591). In any event, CPLR 5004 expressly provides that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute" (emphasis added), allowing for the recognition of statutes that may control certain interest calculations in more narrowly-defined areas of law.
Insurance Law § 5106(a) provides, in relevant part, that "[p]ayments of first party benefits and additional first party benefits shall be made as the loss is incurred[,] [s]uch benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained[,] . . . [and] [a]ll overdue payments shall bear interest at the rate of two percent per month" (see Insurance Law § 5106[a]; New York & Presbyt. Hosp. v. Allstate Ins. Co., 30 AD3d 492, 494). Under former 11 NYCRR 65.15(h), which was in effect at the time of the underlying accident in 1999, "[a]ll overdue mandatory and [additional] personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, compounded and calculated on a pro rata basis using a 30-day month" (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 871; Cardinell v Allstate Ins. Co., 302 AD2d 772, 774; Smithtown Gen. Hosp. v State Farm Mut. Auto. Ins. Co., 207 AD2d 338, 339). The regulation was recodified as of April 5, 2002, as 11 NYCRR 65-3.9, so that more recent decisional authorities refer to the recodified number. The objective of the statute and regulation is to assure the prompt and full payment of economic claims, with the infliction of a monetary sanction or penalty on those insurers which do not comply (see Matter of McKenna v County of Nassau Off. of County Attorney, 61 NY2d 739, 742; East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202, 210; Cardinell v Allstate Ins. Co., 302 AD2d at 774). Insurance Law § 5106(a) and former 11 NYCRR 65.15(h), which were specific directives, supersede the interest provisions contained in CPLR 5004, the more general statute (see Smith v Nationwide Mut. Ins. Co., 211 AD2d 177, 181; Matter of McMillan [Unionamerica Reins. Co.], 70 AD2d 659, 659; Matter of Government Empls. Ins. Co. [Lombino], 57 AD2d 957, 959; Aetna Cas. & Sur. Co. v Whitestone Gen. Hosp., 142 Misc 2d 67, 70 [Sup Ct, New York County]).
Insurance Law § 5106(a) and former 11 NYCRR 65.15(h) directly apply to the dispute and judgment in controversy in this action. Accordingly, the Appellate Term's advisory opinion in the decision and order dated August 18, 2017, and the decision and order on motion dated December 14, 2017, that the postjudgment interest here was governed by CPLR 5004, was incorrect on the law. To the extent that opinions from the Appellate Term provide otherwise as to the proper rate of interest, they generally should no longer be followed in applicable instances.
D. There Was No Reason or Opportunity for BZ to Earlier Litigate the Rate of Interest to Which it was Entitled as to Trigger Res Judicata or Collateral Estoppel Against It
Our dissenting colleague correctly notes that the $8,847.49 judgment rendered in BZ's favor was silent as to both an expressed award of postjudgment interest and its rate of computation. CPLR 5003 statutorily entitled BZ to a postjudgment award of interest as a matter of law, and the judgment would have been better entered had it mentioned the postjudgment rate. Our colleague would hold that since the omission of postjudgment interest was apparent on the face of the judgment, and issues regarding its equitable tolling were litigated at the Civil Court, BZ could have, and should have, litigated its entitlement to calculated interest under Insurance Law § 5106 and former 11 NYCRR 65.15(h) during those times, when it had the opportunity, and that BZ's failure to use those opportunities triggers the preclusive effect of res judicata and collateral estoppel (see Matter of Hunter, 4 NY3d at 269; Buechel v Bain, 97 NY2d at 303-304; Gramatan Homes Invs. Corp. v Lopez, 46 NY2d 481, 485).
We disagree. One reason for disagreement is that BZ would have had no reason to believe that it would receive interest, at whatever point in the postjudgment time line, other than at [*7]the 2% per month rate required as a matter of law by Insurance Law § 5106 and former 11 NYCRR 65.15(h). The remedies of CPLR 5019(a) were simply not required, whether the right to interest in the underlying action be cast as a substantive or a nonsubstantive right.
Another equally important reason for our disagreement with our colleague involves an issue of mathematics rather than law. When Allstate paid the initial amount of $8,842.49, and made a subsequent payment of $14,157.21, to bring its combined total to $22,999.70, the interest paid at those times by Allstate reflects, by mathematical computation of dates and rates, a 2% per month rate of interest, compounded. Taking into account the judicially-imposed tolling period, there were 53 months for which interest was owed between the entry of the judgment on November 15, 2001, and November 1, 2005, and between June 19, 2015, and the payment of $14,157.21 on December 1, 2015, which was a pure-interest payment. Two percent interest for each of those months, with a modest additional sum for compounding, explains how the $14,157.21 payment was computed. This means that for many years prior to and into December 2015, there was never any controversy between the parties as to the proper rate of compounded interest that was to be applied to the judgment. By its actions, Allstate, in paying interest computed at 2% per month compounded, agreed with BZ that the proper rate was that required by Insurance Law § 5106 and former 11 NYCRR 65.15(h). Had Allstate believed that the proper rate of postjudgment interest was 9% per year, it would have tendered a much smaller sum on December 1, 2015, representing the lesser annual 9% CPLR amount.
Only after Allstate had paid BZ the interest of $14,157.21, computed at 2% per month compounded, did Allstate then file a motion in the Civil Court seeking to compel the filing of a satisfaction of judgment. The filing of a satisfaction of judgment raised nothing more than a procedural issue for the court. At that point in time, there was still no controversy between the parties about the rate of interest owed on the underlying judgment. BZ had no reason at that time to raise any issue about the rate of interest in the absence of any controversy over it. Indeed, it might have been frivolous for BZ to have raised at that time the issue of the rate of interest, as the interest had been paid by Allstate using the higher 2% per month rate compounded and represented no controversy. The applicable interest rate remained a nonissue as the parties' litigation proceeded from the Civil Court to the Appellate Term over whether interest should have been equitably tolled, having nothing to do with the rate of its computation.
Controversy over the proper rate of interest never arose until it was created, sua sponte, by the Appellate Term's gratuitous advisory language in its decision and order dated August 18, 2017. As noted, the Appellate Term's advisory language about its suggested rate of interest was incorrect as a matter of law. Upon the issuance of the August 18, 2017 decision and order, BZ promptly sought to litigate the point by filing a motion for a clarification, and prosecuted two motions at both the Appellate Term and this Court for leave to appeal to this Court. Therefore, and contrary to the view of our dissenting colleague, this is not a circumstance which is sometimes seen in the subject area of res judicata or collateral estoppel, where a party had an "opportunity" to litigate an issue so as to be precluded from doing so in a later proceeding. There was no dispute about the proper rate of interest for the parties to actually litigate until one was unnecessarily created by the Appellate Term on August 18, 2017. This Court denied leave to appeal on March 2, 2018. The First Petition filed by BZ in the Supreme Court seeking, inter alia, a declaratory judgment as to the proper rate of interest was filed only two and a half months later.
Our dissenting colleague raises concerns about the operation of CPLR 5019(a) upon the underlying judgment, and whether the declaratory judgment represents an improper collateral attack upon the 2001 judgment itself. Arguments as to those issues were never advanced by Allstate in the Supreme Court and are unpreserved for appellate review (see Century Surety Company v All In One Roofing, LLC, 154 AD3d 803, 808; Weber v Jacobs, 289 AD2d 226, 227). Moreover, they are not even raised by any party on appeal and are therefore not properly before us (see Reborchick v Broadway Mall Props., Inc., 10 AD3d 713, 714; Commissioner of Social Servs. v Clarke, 298 AD2d 519, 520). "For us now to decide [an] appeal on a distinct ground that we winkled out wholly on our own would pose an obvious problem of fair play" (Misicki v Caradona, 12 NY3d 511, 519). This concept has been recognized by our own Court frequently, including in recent decisional pronouncements (see e.g. Kaufman v Kaufman, 189 AD3d 31, 69 ["[W]e are required to decide this case solely with reference to the arguments actually made by the part[y] on the record as it stands"]; Matter of Cassini, 182 AD3d 13, 42; Green Tree Servicing, LLC v Molini, 171 AD3d 880, 882; Levin v State of New York, 32 AD3d 501, 503; Tammaro v County of Suffolk, 224 AD2d 406, 407).
In any event, the judgment was never collaterally attacked, as its terms were never amended by any court that would subject it to CPLR 5019(a) analysis. The judgment awarded BZ what it was entitled to in terms of its claim, prejudgment interest, costs, and disbursements, and the Supreme Court's declaratory judgment merely declared the rate of postjudgment interest to which BZ had always been statutorily entitled, and which BZ had actually received from Allstate during the period of time for which interest was actually paid.
E. Allstate's Motion for Leave to Renew and Reargue
In its order entered April 22, 2019, the Supreme Court properly denied that branch of Allstate's motion which was for leave to renew its cross petition. The dismissal of the First Petition for improper service of process was not a "new fact" that would have affected the court's earlier determination (see Vega v Gambino, 184 AD3d 600, 601-602; Matter of O'Gorman v O'Gorman, 122 AD3d 744, 745). In any event, the dismissal of the First Petition for improper service of process is not a dismissal on the merits (see Kokoletsos v Semon, 176 AD2d 786, 787; Colbert v International Sec. Bur., 79 AD2d 448, 465), and fails to raise, in and of itself, the defenses of res judicata, collateral estoppel, or law of the case.
The appeal from so much of the order entered April 22, 2019, as denied that branch of Allstate's motion which was for leave to reargue its cross petition, must be dismissed, as no appeal lies from an order denying reargument (see Matter of Rosenberg v Schwartz, 176 AD3d 1069, 1070; Gentry v Mean, 166 AD3d 583).
F. The Supreme Court Properly Denied That Branch of Allstate's Cross Petition Which was for Sanctions
In the order appealed from entered March 8, 2019, the Supreme Court denied that branch of Allstate's cross petition which was to impose sanctions against BZ pursuant to 22 NYCRR 130-1.1 for commencing a frivolous proceeding.
Contrary to Allstate's contention, BZ's proceeding was not frivolous. BZ prevailed on the merits in the order appealed from on the issues of res judicata, collateral estoppel, law of the case, and the proper rate of statutory interest. Even if we held otherwise, the parties' unique procedural history and the issues raised before the Supreme Court were facially arguable and not subject to the imposition of sanctions (see Stow v Stow, 262 AD2d 550, 551).
III. Miscellaneous
The parties' remaining contentions either are without merit or need not be reached in light of our determinations.
Since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Queens County, for the entry of a judgment, among other things, declaring that postjudgment interest on the judgment entered on November 15, 2001, in favor of BZ and against Allstate in the amount of $8,847.49 accrued at the rate of 2% per month compounded (see Lanza v Wagner, 11 NY2d 317, 334).
IV. Conclusion
In light of the foregoing, the order entered March 8, 2019, is affirmed insofar as appealed from, and the order entered April 22, 2019, is affirmed insofar as reviewed.
BARROS and CHRISTOPHER, JJ., concur.
ORDERED that the order entered March 8, 2019, is affirmed insofar as appealed from; and it is further,
ORDERED that the appeal from so much of the order entered April 22, 2019, as denied that branch of the motion of Allstate Insurance Company which was for leave to reargue is dismissed, as no appeal lies from an order denying reargument; and it is further,
ORDERED that the order entered April 22, 2019, is affirmed insofar as reviewed; and it is further,
ORDERED that the matter is remitted to the Supreme Court, Queens County, for the entry of a judgment, inter alia, declaring postjudgment interest on the judgment entered on November 15, 2001, in favor of B.Z. Chiropractic, P.C., and against Allstate Insurance Company in the amount of $8,847.49 accrued at the rate of 2% per month compounded; and it is further,
ORDERED that one bill of costs is awarded to B.Z. Chiropractic, P.C.
CONNOLLY, J., concurs in part and dissents in part, and votes to modify the order entered March 8, 2019, on the law, (1) by deleting the provision thereof granting that branch of the petition/complaint which was for a judgment declaring that a judgment in favor of B.Z. Chiropractic, P.C., and against Allstate Insurance Company entered November 15, 2001, in the Civil Court, Queens County, accrued interest at the rate of 2% per month compounded, and substituting therefor a provision denying that branch of the petition/complaint, and (2) by deleting the provision thereof denying that branch of the cross petition of Allstate Insurance Company which was to dismiss the proceeding/action, and substituting therefor a provision granting that branch of the cross petition, and, as so modified, to affirm the order entered March 8, 2019, insofar as appealed from, to dismiss the appeal from so much of the order entered April 22, 2019, as denied those branches of the motion of Allstate Insurance Company which were for leave to reargue and for leave to renew that branch of the cross petition which was to dismiss the proceeding/action, and to affirm the order entered April 22, 2019, insofar as reviewed, with the following memorandum:
I respectfully dissent in part because, in my view, a plenary proceeding in Supreme Court is an inappropriate vehicle to determine the rate at which postjudgment interest accrues on a Civil Court judgment. Review of that issue is, in my view, barred by the doctrines of res judicata and collateral estoppel, and should have been rejected as an improper collateral attack on a judgment rendered by another court.
I.
On or about November 1, 2000, B.Z. Chiropractic, P.C. (hereinafter BZ), commenced an action against the defendant Allstate Insurance Company (hereinafter Allstate) in the Civil Court, Queens County, to recover assigned no-fault benefits in the principal sum of $3,585.16. BZ also sought attorney's fees, "interest at 2 percent per month from Aug. 2, 1999, compounded monthly," and costs. Allstate answered. In an order dated October 24, 2001, the court awarded the plaintiff summary judgment. On November 15, 2001, the Clerk of the Civil Court entered judgment in favor of BZ and against Allstate in the sum of $8,847.49, which sum included $2,775 prejudgment interest at a rate of 2% per month. The judgment is silent as to the rate at which postjudgment interest is to accrue.
By letter dated June 10, 2015, BZ's attorney wrote to Allstate, attaching a copy of the unsatisfied judgment, demanding payment of the $8,847.49 judgment, plus $221,134.17 postjudgment interest, calculated at a rate of 2% per month.
Allstate tendered two checks to BZ, both dated July 16, 2015, in the sums of $7,852.49 and $990.00, respectively, which BZ presented for payment, adding "without prejudice" to its endorsement.
Allstate moved in the Civil Court, inter alia, for a protective order, modification of the judgment, and a discharge, claiming that BZ unreasonably delayed in enforcing the judgment for nearly 15 years. In an order dated November 16, 2015, the court granted Allstate's motion to the extent of holding that interest would not accrue from November 1, 2005, through June 19, 2015.
Allstate tendered BZ a check dated December 1, 2015, in the sum of $14,157.21, which BZ presented for payment "without prejudice."
Thereafter, Allstate moved, among other things, to compel the issuance of a satisfaction of judgment. In an order entered July 7, 2016, the Civil Court directed the Clerk to enter a satisfaction of judgment.
BZ appealed the November 16, 2015 and July 7, 2016 orders to the Appellate Term for the 2nd, 11th, and 13th Judicial Districts. In a decision and order dated August 18, 2017, the Appellate Term held that the Civil Court erred in tolling the interest on the judgment and, therefore, Allstate was only entitled to a partial satisfaction of judgment. Further, the Appellate Term stated: "We note that, contrary to [BZ's] position, postjudgment interest should be calculated pursuant to CPLR 5004 and not at the two percent per month rate provided for in 11 NYCRR 65-3.9."
BZ moved for clarification of the Appellate Term's order or, in the alternative, for leave to appeal to this Court. In a decision and order on motion dated December 14, 2017, the Appellate Term held: "the branch of the motion seeking clarification is granted to the extent of clarifying that it was this court's intention to note that interest be awarded at the rate of nine percent per year as set forth in CPLR 5004." The Appellate Term further held: "the branch of the motion [*8]seeking leave to appeal to the Appellate Division is denied without prejudice to appellant's other remedies, if any, as the portion of this court's decision and order which appellant seeks to appeal is advisory and is not appealable as of right or by permission."
BZ moved in this Court for leave to appeal the Appellate Term's order dated August 18, 2017. This Court, without opinion, denied leave to appeal.
II.
Having received an unfavorable ruling on the issue of the rate of postjudgment interest from the Appellate Term, and been denied leave to appeal that ruling to this Court, BZ turned to the Supreme Court, Queens County, as a new potential avenue for relief.
On December 28, 2018, in a pleading denominated as a petition (hereinafter the petition), BZ commenced this proceeding/action in Supreme Court, Queens County, against Allstate "for a declaratory judgment and order pursuant to CPLR 5225 against Allstate [], directing Allstate [] to turn over monies from its bank account maintained outside New York State with Bank of America, N.A. in such sum as is sufficient to satisfy the judgment, and determining that the judgment has and continues to accrue interest . . . at the rate of 2% per month compounded" (emphasis added). The petition alleged that the Appellate Term's decision and order dated August 18, 2017, was ambiguous as to the rate that postjudgment interest accrued on the judgment. The petition urged that the Appellate Term's opinion as to the rate that postjudgment interest was to accrue was, in any event, advisory in nature and not binding on the Supreme Court. The petition also alleged that in Craniofacial Pain Mgt. v Allstate Ins. Co. (61 Misc 3d 155[A], 2018 NY Slip Op 51825[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists]), a case with similar facts, the Appellate Term incorrectly decided the rate at which postjudgment interest accrued.
Allstate opposed BZ's petition by way of a "cross-petition to dismiss," which sought sanctions on the ground that the petition was frivolous. Allstate argued that BZ was improperly attempting to relitigate matters that were resolved in Allstate's favor: "Unsatisfied with the finality of the trial courts and appellate courts, [BZ] now knowingly seeks a second bite at the apple. This, in and of itself, is frivolous." Allstate argued that the matter must be dismissed on the grounds of res judicata and collateral estoppel, based upon the identity of the parties and issues that were previously determined on the merits. Allstate argued that the Appellate Term's determination as to the rate that postjudgment interest should accrue was clear and unambiguous. Allstate argued that, upon receiving an undesirable ruling from the Appellate Term, BZ "simply repackaged its original case into the petition now before this court."
In an order entered March 8, 2019, the Supreme Court denied that branch of BZ's petition which sought a turnover of monies from Allstate's bank account, because BZ failed to name Bank of America, N.A., as a party to the action. However, the court determined that BZ was entitled to a judgment declaring that postjudgment interest on a judgment for first-party no-fault benefits accrues at a rate of 2% per month. The court reasoned that, with respect to interest on awards of first-party benefits, the Insurance Law supersedes the CPLR's provisions for the accrual of interest, and that "the rate of interest is not reduced simply because the claim has been reduced to a judgment." The court denied Allstate's request for sanctions.
Allstate moved to renew and reargue its cross petition. In an order entered April 22, 2019, the Supreme Court denied Allstate's motion in its entirety.
III.
Allstate appeals from the Supreme Court's orders entered March 8, 2019, and April 22, 2019. On appeal, Allstate argues, inter alia, that BZ improperly used a turnover proceeding to appeal the Appellate Term's determination as to the rate at which postjudgment interest was to be calculated on its judgment. Allstate argues that BZ's improper use of a turnover proceeding, if allowed, "completely upends our system of finality by permitting invalid attempts to endlessly appeal." Allstate argues that collateral estoppel, res judicata, and claim preclusion bar this proceeding, since the two parties to the instant proceeding are the identical parties to the action initiated in Queens County Civil Court, and the Appellate Term decided the identical issue of the rate of postjudgment interest.
In opposition, BZ argues, among other things, that the Appellate Term's determination as to the rate of postjudgment interest was advisory and non-binding, and without prejudice to BZ seeking a judicial determination in Supreme Court as to the rate at which postjudgment interest was to accrue.
IV.
In my view, BZ's application to the Supreme Court for declaratory relief as to the rate at which postjudgment interest accrued on its Queens County Civil Court judgment was barred by res judicata and collateral estoppel, and constituted an improper collateral attack on the judgment.
"Issue preclusion, also known as collateral estoppel, bars the relitigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment" (Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d 64, 72 [internal quotation marks omitted]). "The doctrine of collateral estoppel [is] a narrower species of res judicata" (Ryan v New York Tel. Co., 62 NY2d 494, 500). The doctrine of collateral estoppel "bars relitigation of an issue which has necessarily been decided in a prior action and is determinative of the issues disputed in the present action, provided that there was a full and fair opportunity to contest the decision now alleged to be controlling" (Mahler v Campagna, 60 AD3d 1009, 1011). "Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling" (Buechel v Bain, 97 NY2d 295, 303-304; see Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485).
"While issue preclusion," i.e., collateral estoppel, "applies only to issues actually litigated, claim preclusion (sometimes used interchangeably with 'res judicata') more broadly bars the parties or their privies from relitigating issues that were or could have been raised in that action" (Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d at 72 [emphasis omitted]). "[R]es judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was" (Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 122 [internal quotation marks omitted]; see Puryear v Hutchinson, 175 AD3d 521, 522). "The doctrine of res judicata operates to preclude the reconsideration of claims actually litigated and resolved in a prior proceeding, as well as claims for different relief against the same party which arise out of the same factual grouping or transaction, and which should have or could have been resolved in the prior proceeding" (Mahler v Campagna, 60 AD3d at 1011; see Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d at 72). "The doctrine encompasses the law of merger and bar—it precludes the relitigation of all claims falling within the scope of the judgment, regardless of whether or not those claims were in fact litigated" (Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d at72 [internal quotation marks omitted]).
Collectively, the doctrines of collateral estoppel and res judicata "serve to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication" (id. at 73 [internal quotation marks omitted]). Attempts to relitigate issues that have been previously decided, or which could have been raised, strain judicial resources and "serve only to undermine public confidence in the judicial process" (id.).
A. Res Judicata
Although the Civil Court judgment was silent as to the rate of postjudgment interest, BZ could have sought redress in the Civil Court or by direct appeal from the judgment to correct that omission, but there is no evidence in the record that BZ sought such relief. Since the issue of postjudgment interest could have been raised in the Civil Court action, BZ was barred from resorting to the Supreme Court for a determination of that issue.
BZ had a number of avenues through which it could have sought redress in the Civil Court action, without resorting to a separate plenary action. For instance, BZ could have moved for correction of the judgment to include a postjudgment rate of interest. Depending on the circumstances of the case, the rate at which interest accrues on a judicial award "may" constitute a substantive right (DHE Homes, Ltd. v Jamnik, 172 AD3d 1164, 1166; see Kiker v Nassau County, 85 NY2d 879, 881 ["the correct rate of interest to be applied to a verdict can constitute a substantive right of a party"]). Where a judgment's misstatement or omission as to the proper rate of interest is deemed to be a non-substantive matter, the judgment may be corrected by way of motion pursuant to CPLR 5019(a), which permits a trial or appellate court to correct a mistake, defect, or irregularity in a judgment (see Kiker v Nassau County, 85 NY2d at 881; DHE Homes, Ltd. v Jamnik, 172 AD3d at 1166). Assuming for argument's sake that the rate of postjudgment interest in this case was a non-substantive matter, there is no evidence that BZ requested that the Civil Court correct the judgment [*9]to include a provision for the rate of postjudgment interest.
Alternatively, where a judgment's rate of interest is deemed to be a substantive right, an aggrieved party's options are more circumscribed (see Kiker v Nassau County, 85 NY2d at 881).
"[A] substantive change to a prior order or judgment . . . cannot be made under CPLR 5019(a), even with notice to the parties and an opportunity to be heard. Trial courts have no revisory or appellate authority to correct by amendments any errors of substance in prior orders or judgments. Where a movant seeks to change an order or judgment in a substantive manner, rather than correcting a mere clerical error, CPLR 5019(a) is not the proper procedural mechanism to be employed, and relief should be sought through a direct appeal or by motion to vacate pursuant to CPLR 5015(a). Alternatively, a substantive correction to an order or judgment can be accomplished by a party's timely motion to reargue under CPLR 2221(d)"
(Sokoloff v Schor, 176 AD3d 120, 132-133 [citations and internal quotation marks omitted; emphasis added] [Opinion of Dillon, J.]; see Herpe v Herpe, 225 NY 323, 327 ["[substantive] errors are, under our system of procedure, to be corrected either by the vacating of the judgment or by an appeal"]). The Court of Appeals characterized its holding in Matter of City of New York (Roteeco Corp.) (33 NY2d 970), as standing for the proposition that "where rate of interest is litigated and determined by a Judge, any challenge to the interest rate must be made on direct appeal" (Kiker v Nassau County, 85 NY2d at 881 [emphasis added]).
However, BZ never appealed from the Civil Court's judgment and, assuming without deciding that the omission of the rate of postjudgment interest constituted a substantive matter, by failing to file a direct appeal, the judgment's terms became final (see Matter of City of New York [Roteeco Corp.], 33 NY2d at 971-972 ["Nor did the earlier partial decree applicable to the fee claimant, appellant Roteeco Corporation, reserve any right to interest at other than the then lawful 4% statutory rate. Both partial decrees, from which claimants took no appeal, became final and the trial court had no jurisdiction to alter its decree in any matter of substance"]).
The remedies afforded by CPLR 5019(a) or by a direct appeal were available to BZ in the Civil Court action, but were evidently not pursued. The rate of interest was before the Civil Court in the underlying action, insofar as the underlying complaint demanded "interest at 2 percent per month from Aug. 2, 1999, compounded monthly."
Consequently, the doctrine of res judicata precludes the instant litigation regarding the rate of postjudgment interest, insofar as the proper rate of postjudgment interest "could have been raised in the prior litigation" (Matter of Hunter, 4 NY3d 260, 269). Moreover, to the extent that BZ could have obtained relief by moving to reargue the Civil Court's order or judgment, there is no indication that it availed itself of that procedural mechanism (see Sokoloff v Schor, 176 AD3d at 132-133).
Citing the Supreme Court's unique authority to render declaratory judgments, my colleagues in the majority conclude that "[t]he Supreme Court's subject matter jurisdiction was not circumscribed by the fact that prior, related proceedings had been pending in the Civil Court, Queens County." To support that proposition, the majority relies upon Abed v Zach Assoc. (124 AD2d 531, 532), and Hunter Sports Shooting Grounds, Inc. v Foley (73 AD3d 702, 705), which both hold that: "A request for relief in the form of a declaratory judgment may not be refused simply because of the pendency of a separate action if all legal and factual issues cannot be disposed of in the pending suit or if the controversy will not necessarily be determined therein" (Abed v Zach Assoc., 124 AD2d at 532; see Hunter Sports Shooting Grounds, Inc. v Foley, 73 AD3d at 705). Those cases are plainly distinguishable in that the Civil Court is entirely capable of rendering a determination as to the rate of postjudgment interest on a judgment that it enters. By contrast, the cases relied upon by the majority involved matters that the Civil Court is without authority to adjudicate. In Abed, the plaintiff sought a declaration, effectively on equitable grounds, that a nonsignatory should be deemed to be a tenant under a residential lease. In Hunter Sports Shooting Grounds, Inc., the plaintiff, who was facing prosecution for violating a noise ordinance, sought a declaration in Supreme Court that the ordinance was unconstitutional. Although the Civil's Court's jurisdiction is proscribed in matters involving equitable and declaratory relief (see e.g. Trump Vil. Section 3 v Sinrod, 219 AD2d 590, 592; Housing & Dev. Admin. of City of N.Y. v Community Hous. Improvement Program, 90 [*10]Misc 2d 813, 814-815 [App Term, 2d Dept], affd 59 AD2d 773), BZ could have raised the issue of postjudgment interest in the Civil Court action and, therefore, this action is barred by the doctrine of res judicata.
Moreover, because the doctrine of res judicata bars litigation of issues that could have been raised in a prior proceeding, I disagree with the majority's framing of the issue in this case as: "[W]hether an advisory opinion or dicta in an order by a court qualifies under res judicata, collateral estoppel, or the law of the case doctrine, to preclude a court in a later proceeding from considering the same issue." Since BZ had every opportunity to ensure that the judgment specified the rate at which it believed postjudgment interest should have accrued, it is immaterial whether the Appellate Term's statement regarding the rate of postjudgment interest was dicta or advisory. Rather, the proper framing of the issue, for purposes of a res judicata analysis, is whether the parties could have raised the issue of postjudgment interest in the prior action.
B. Collateral Estoppel
Alternatively, this action is barred by the doctrine of collateral estoppel. Here, in its decision and order dated August 18, 2017, the Appellate Term, undisputably a court of competent jurisdiction, rendered a determination on the merits as to the rate that postjudgment interest was to accrue on BZ's judgment: "We note that, contrary to plaintiff's position, postjudgment interest should be calculated pursuant to CPLR 5004 and not at the two percent per month rate provided for in 11 NYCRR 65-3.9." Since BZ was a party to that action, it is bound by that determination under the doctrine of collateral estoppel.
Although I agree with BZ that a purely advisory opinion should not be given collateral estoppel effect (see Thiebeau v Wahl, 91 AD2d 869), I disagree with BZ's contention that the Appellate Term's post hoc characterization of its holding as to the rate of postjudgment interest as "advisory" necessarily means that such determination was not on the merits. The rate at which interest accrued on the judgment was the subject of disagreement between the parties, and the Appellate Term rendered a determination as to that controversy (see Self-Insurer's Assn. v State Indus. Commn., 224 NY 13, 16 ["The function of the courts is to determine controversies between litigants. They do not give advisory opinions." (citations omitted)]). In the same order where the Appellate Term referred to its holding as "advisory," it also unambiguously clarified that its intention was "to note that interest be awarded at the rate of nine percent per year" (emphasis added).
Since the Appellate Term actually decided the rate of postjudgment interest and this Court denied BZ's application for leave to appeal from the Appellate Term's order, the matter should have been deemed finally concluded, and barred by the doctrine of collateral estoppel (see Paramount Pictures Corp. v Allianz Risk Transfer AG, 31 NY3d at 72).
C. This Proceeding/Action Constitutes an Improper Collateral Attack on the Judgment
Allstate argues that the Supreme Court's determination "completely upends our system of finality by permitting invalid attempts to endlessly appeal." Although Allstate does not use the precise phrase "collateral attack" in its papers, the essence of Allstate's argument is that the proceeding/action constitutes an improper collateral attack on the judgment. While the majority dismisses this issue as unpreserved and not before us, the concepts of res judicata (which was raised) and collateral attack are so closely related that they are essentially different terms for the same policy-driven prohibition on attempting to relitigate issues between parties who have already had their day in court: "[U]nder the doctrine of res judicata a matter once judicially decided is finally decided; therefore, a litigant will not be heard to attack collaterally a matter which was or could have been determined in the prior litigation" (Friedman v State of New York, 24 NY2d 528, 535 [emphasis added]).
"Generally, a judgment is not open to collateral attack where the court had jurisdiction of the subject matter and of the parties, as well as jurisdiction to render the judgment, regardless of whether the judgment was right or wrong" (73 NY Jur Judgments § 275 [footnote omitted]). "A collateral attack upon a prior judgment is an attempt to avoid, defeat, or evade a judicial decree, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking the prior judgment" (id.). Here, the Civil Court had jurisdiction over the parties as well as jurisdiction to enter a judgment as to the applicable postjudgment rate of interest and, therefore, BZ should not be permitted to collaterally attack the Civil Court judgment through the instant action.
Morever, this case does not fit within any of the narrow exceptions to the general rule prohibiting collateral attacks on judgments. The judgment is not, for instance, jurisdictionally [*11]defective (see Royal Zenith Corp. v Continental Ins. Co., 63 NY2d 975, 977 ["a judgment rendered without jurisdiction is subject to collateral attack"]), nor was it rendered as the result of a fraudulent scheme (see Specialized Indus. Servs. Corp. v Carter, 68 AD3d 750, 752 ["The plaintiff here . . . has sufficiently alleged a larger fraudulent scheme to fit within the exception to the rule against collateral attack"]; see also New York City Tr. Auth. v Morris J. Eisen, P.C., 276 AD2d 78, 88). Additionally, although BZ was entitled to bring a direct appeal to correct the judgment's omission as to the rate of postjudgment interest, it failed to do so (see Gager v White, 53 NY2d 475, 484 n 1 ["It is settled that judgments where the normal appellate process has been exhausted may not be collaterally attacked"]).
BZ's avenue for relief, if any, should have been within the context of the Queens County Civil Court action, rather than—17 years later— collaterally attacking the judgment's failure to specify the rate of postjudgment interest by commencing a new plenary action in Supreme Court (see Chibcha Rest., Inc. v David A. Kaminsky & Assoc., P.C., 102 AD3d 544, 545; Matter of Limitone Enters., Inc. v Walker, 102 AD3d 697, 697-698; Weinstock v Citibank, 289 AD2d 326, 326). Stated differently, a court of original jurisdiction should not entertain an action for a declaration that another court's determination as to a particular controversy was incorrect.
V.
Accordingly, in my view, BZ was not entitled to a declaration in this proceeding/action that postjudgment interest on its Civil Court judgment accrues at a rate of 2%. I agree with my colleagues in the majority that Allstate was not entitled to sanctions. I respectfully vote to modify the order entered March 8, 2019, insofar as appealed from, deny that branch of the petition which was for a judgment declaring that the judgment in favor of BZ accrued interest at the rate of 2% per month compounded, and grant that branch of Allstate's cross petition which was to dismiss the proceeding/action. In addition, I vote to dismiss the appeal from so much of the order entered April 22, 2019, as denied that branch of Allstate's motion which was for leave to reargue, as no appeal lies from an order denying reargument, to dismiss the appeal from so much of the order entered April 22, 2019, as denied that branch of Allstate's motion which was for leave to renew that branch of its cross petition which was to dismiss the proceeding/action as academic in light of our determination on the appeal from the order entered March 8, 2019, and to affirm the order entered April 22, 2019, insofar as reviewed.
ENTER:
Aprilanne Agostino
Clerk of the Court